## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sherryl Gfroerer and Jon Gfroerer, <br><br> Plaintiffs, <br><br> v. <br><br> Menard, Inc., <br><br> Defendant. | Case No. 0:20-cv-00812 (SRN/KMM) <br><br><br> **MEMORANDUM ORDER AND OPINION** |

Pamela F. Rochlin, Rochlin Law Firm, Ltd., 5200 Willson Road, Suite 412, Edina, MN 55424, for Plaintiffs.

Daniel J. Singel, McCollum Crowley P.A., 7900 Xerxes Avenue South, Suite 700, Bloomington, MN 55431, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Summary Judgment Motion [Doc. No. 26] filed by Defendant, Menard, Inc. Based on a review of the files, submissions, and proceedings herein, and for the reasons set forth below, the Court **DENIES** the motion.

## I.   BACKGROUND

### A.   Parties

Plaintiff Sherryl Gfroerer ("Ms. Gfroerer") is a 74-year-old resident of Zimmerman, Minnesota. (Zeletes Decl. [Doc. No. 29], Ex. 2 ("Ms. Gfroerer Dep.") at 4.) She lives with her husband of 54 years, Plaintiff Jon Gfroerer ("Mr. Gfroerer"). (Zeletes Decl., Ex. 3 ("Mr. Gfroerer Dep.") at 4, 7–8.) They are both retired and live independently, receiving

occasional help from their four children and nine grandchildren. (*Id.* at 8–9; Ms. Gfroerer

Dep. at 52–53.)

Defendant Menard, Inc. ("Menards") is a Wisconsin-based corporation with a retail

business location in Elk River, Minnesota. (Compl. [Doc. 1] ¶ 1.)

## B.   Factual Background

### 1.   Menards Elk River Location

Plaintiffs are longtime customers (or "guests," as Menards calls its customers) of

Menards. (Ms. Gfroerer Dep. at 23.) When they shop there, Plaintiffs typically take a

shopping cart from the Menards "cart corral," located near the store's interior entrance. (*Id.*

at 24–25.)

When entering the Elk River Menards store, customers walk into an open area with

a guest services window on the left, and a cart corral on the right. (Rochlin Decl. [Doc. No.

34] Ex. 1, Floorplan.) The part of the cart corral located closest to the entrance is where

Menards' employees, known as "carryouts," push trains of carts that they have retrieved

from the parking lot. (Zeletes Decl., Ex. 6, Dep. of Menards 30(b)(6) Witness ("Werner

Dep.") at 121–22.) In between the guest services window and the cart corral is a turnstile,

depicted below, which customers must pass through to access the shopping area. (Rochlin

Decl. Ex. 1, Floorplan.)



(Rochlin Decl., Ex 3, photo of entryway and entrance side of cart corral.)

After passing through the turnstile, customers typically turn toward the cart corral to retrieve a cart, standing in the area depicted below, which is referred to as the "guest end" of the cart corral. (Werner Dep. at 121–22.)



(Rochlin Decl., Ex. 4, photo of guest end of cart corral.)

Because of the configuration of Menards' cart corral and turnstile, only the front end of a cart is accessible to customers on the guest end of the cart corral. (Werner Dep. at

121–22.) Customers must pull a cart from the front, which lacks a handle, to free it from the corral. After pulling it free, customers usually reposition themselves at the cart's handle, resulting in them facing the shopping area with their backs to the corral. (*Id.* at 123–124.) While turned away from the corral, many customers place their young children or belongings into the cart's child seat. (*Id.* at 123.)

### 2.    The April 11, 2015 Incident

On April 11, 2015 at 11:00 a.m., Plaintiffs entered the Elk River Menards and passed through the turnstile. (Zeletes Decl., Ex. 7, Surveillance footage, "Entrance 1" at 0:50.) Ms. Gfroerer then turned toward the guest-end of the cart corral to take a cart. (*Id.*; Ms. Gfroerer Dep. at 26.) After pulling a cart by the front to an area just beyond the guest end of the cart corral, Ms. Gfroerer placed her purse on the cart's child seat. (Ms. Gfroerer Dep. at 29–30.) She had just begun pushing her cart into the store, with her back to the cart corral, when a train of carts struck her from behind. (*Id.*) She testified that the carts hit her ankle and back with so much force that only her own cart kept her from falling. (*Id.* at 29–32; Mr. Gfroerer Dep. at 30.)

Mr. Gfroerer, who was standing near his wife when she was struck, turned to face the entrance side of the cart corral. (Mr. Gfroerer Dep., at 31–32.) He testified that he then saw a Menards employee wearing a yellow vest who apologized for hitting Ms. Gfroerer. (*Id.* at 32.)

Footage from Menards' front-entrance security camera on April 11, 2015 shows a carryout entering the store twenty-to-thirty seconds after Plaintiffs entered the store. (Zeletes Decl., Ex. 7, Entrance 1 at 0:52–1:17.) While Menards has not definitively

identified the employee in the video, the parties agree that it was likely A.D.,[1] an employee who worked as a cashier and occasionally collected carts. (Def.'s Mem. [Doc. No. 28] at 4; Zeletes Decl., Ex. 5 ("A.D. Dep.") at 28.) For purposes of this motion, the Court assumes that the carryout depicted in the video was A.D. There is no interior surveillance video showing the guest end of the cart corral, as the coverage of Menards' security cameras did not reach that area. (Werner Dep. at 167.)

Menards' Rule 30(b)(6) witness, Ian Werner, reviewed the video footage and testified that A.D. appeared to be moving at a safe and controlled rate of speed. (Werner Dep. at 169.) Additionally, the footage establishes that two other Menards employees, Matthew West and Brady Hoffman, were in the vicinity when Ms. Gfroerer was struck. (Zeletes Decl., Ex. 7, Entrance 1 at 0:54–1:00; West Dep. at 69–74.) West, who worked as the First Assistant Front End Manager of the Elk River Menards at that time, testified that if a carryout was pushing a train of carts at an unsafe angle or pace, he would expect "the good [carryouts] and good employees" to assist their fellow carryouts by guiding the carts into the store. (West Dep. at 108–109.) Security camera footage from the day of the incident shows an employee offering such assistance to a different carryout before Plaintiffs or A.D. enter the store. (Zeletes Decl., Ex. 7, Entrance 1 at 0:28–0:45.)

A.D. testified that if he felt that he was losing control of his carts, he was trained to request help from other employees. (Zeletes Decl., Ex. 5, A.D. Dep. at 94.) In the security camera footage showing A.D. pushing carts into the store prior to the incident, no one

---

[1] A.D. was a minor at the time of the incident, so the court will refer to him by his initials only.

offers to assist A.D., nor does A.D. ask for help. (*Id.* at 76; Zeletes Decl., Ex. 7, Surveillance Footage.)

After Ms. Gfroerer was struck by the carts, she and her husband continued into the store. (Ms. Gfroerer Dep. at 34–35.) Within a few minutes, however, due to back pain, Ms. Gfroerer informed her husband that they needed to go home. (*Id.*) As they were about to exit the store, an employee stopped them and brought them to a manager, West, who completed an incident report regarding Ms. Gfroerer's injury. (*Id.* at 35–36.) Ms. Gfroerer recalls that during their interaction with West, he informed her that he had seen her "get hit out of the corner of his eye." (*Id.* at 37.) In the incident report, under "description of accident," West wrote, "[carryout] was pushing carts into cart co[r]ral and the end of the line was pushed into the guest hitting her back and ankle." (Rochlin Decl., Ex. 5, Incident Report.) At his deposition, West testified that he did not recall the accident itself or writing the incident report. (West Dep. at 67–68.)

Menards submitted the incident report to Gallagher Bassett, a company that it uses to investigate and process such claims. (Rochlin Decl. ¶ 9.) Gallagher Bassett reviewed Ms. Gfroerer's medical records and paid $5,000 for her medical bills. (*Id.*)

### 3.   Ms. Gfroerer's Injury

In March 2021, Ms. Gfroerer underwent an Independent Medical Exam ("IME") at Menards' request. (Rochlin Decl., Ex. 6, Rule 35 Medical Examination Report.) The examining physician, Dr. Mark Thomas, determined that, since her injury, Ms. Gfroerer has had ongoing back pain without relief from conservative treatment. (*Id.* at 4.) Dr. Thomas opined that "she has sustained a permanent injury or disability as a direct result of

the April 11, 2015 incident." (*Id.*) He also noted Ms. Gfroerer's pain has persisted despite various treatments, including physical therapy, acupuncture, injections, and medications. (*Id.* at 3.) Ms. Gfroerer testified that since the injury, she no longer is able to participate comfortably in activities that she previously enjoyed such as gardening and boating. (Ms. Gfroerer Dep. at 55–60.) Additionally, her husband has had to assume responsibility for many housekeeping tasks that Ms. Gfroerer previously performed, such as vacuuming and scrubbing the floors. (Mr. Gfroerer Dep. at 70–72.)

### C.   Procedural Background

On March 5, 2020, Plaintiffs filed this suit in state court, alleging that Menards is liable for the negligence of its employee A.D., and is liable to Mr. Gfroerer for loss of consortium. (Compl. ¶¶ 4, 8, 10.) Defendant removed the case to federal court on March 26, 2020. (Notice of Removal [Doc. No. 1].) Defendant now moves for summary judgment on both of Plaintiffs' claims.

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). And a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Rohr v. Reliance Bank*, 826 F.3d 1046, 1052 (8th Cir. 2016); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.      Applicable Law

"Negligence is generally defined as the failure to exercise such care as persons of ordinary prudence usually exercise under such circumstances." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011) (citations omitted). Under Minnesota law, to state a prima facie case for negligence, Plaintiffs must demonstrate that: (1) Defendant owed Plaintiffs a duty of care; (2) Defendant breached that duty; (3) the breach was the proximate cause of Plaintiffs' injury; and (4) Plaintiffs did in fact suffer an actual injury. *Id.*

At issue in the instant motion is the element of breach of the duty of care. To proceed to trial, Plaintiffs must demonstrate that a genuine issue of material fact is in dispute as to whether Menards failed to exercise reasonable care. *Lommen v. Adolphson & Peterson Construction Co.*, 168 N.W.2d 673, 677 (Minn. 1969); 4 MINNESOTA PRACTICE SERIES, JURY INSTRUCTION GUIDES-CIVIL, CIVJIG 25.10 (Minn. Dist. Judges Ass'n, 5th ed. 2006). Plaintiffs need not identify direct evidence in the record, as "[n]egligence may be established by circumstantial evidence alone 'as long as the evidence does not equally

sustain any other theory.'" *Park v. Kim*, No. C9-97-1916, 1998 WL 202775, at *5 (Minn. Ct. App. Apr. 28, 1998) (citing *Bethesda Lutheran Church v. Twin City Constr. Co.*, 356 N.W.2d 344, 348 (Minn. App.1984)).

### C.   Analysis

Menards argues that Plaintiffs have failed to identify a genuine disputed issue of material fact for trial, because it argues that A.D. was moving at a safe pace and was in control of his train of carts when Ms. Gfroerer was injured. (Def.'s Mem. at 5 (citing West Dep. at 110–11; Zeletes Decl., Ex. 6, ("Werner Dep.") at 169; A.D. Dep. at 95).) Menards contends that the security-camera footage conclusively proves that A.D. was pushing carts into the corral with reasonable care. (Def.'s Mem. at 4.) In particular, Menards notes that A.D. was moving slowly and must have been in control of his train of carts because he did not request, nor receive, assistance. (*Id.*) Because A.D. was moving safely, Menards argues, Plaintiffs have failed to identify any evidence that A.D. breached his duty of reasonable care. (*Id.*) Defendant further contends that Plaintiffs' position that the "cart pushing procedures" used by Menards and A.D. "could have been safer" fails to raise a triable issue in this case. (Def.'s Reply [Doc. No. 38] at 2.)

Plaintiffs disagree. They argue that whether A.D. violated his duty of care is for the fact finder to decide. (Pl.s' Opp'n Mem. [Doc. No. 33] at 1.) Plaintiffs point to evidence in the record and sworn testimony from which a fact finder could infer that A.D. violated his duty of care when the train of carts that he was pushing collided with Ms. Gfroerer. (*See e.g.*, *Id.* at 25 (citing Rochlin Decl., Ex. 5, Incident Report); *Id.* at 27 (citing A.D. Dep. at 69).)

### 1.    Duty of Care

The Court agrees that fact issues preclude summary judgment. Sufficient evidence exists for a reasonable jury to find that Menards violated its duty of care to Plaintiffs.

First, as to the relevant standard of care, Menards acknowledges its duty of care to its customers. Several Menards employees testified about how a reasonable carryout should keep control of a train of carts. For example, Mr. Werner, as Menards' corporate representative, testified that a reasonable carryout should ensure that he was not pushing too many carts—only 10 or fewer carts at a time. (Werner Dep. at 42–43.) Likewise, both Werner and West testified that a reasonable carryout would ensure that he was walking slowly, in order to maintain control. (Werner Dep. at 103; West Dep. at 47.) West also testified that a reasonable carryout would ask for assistance if he felt like he did not have control of his carts. (West Dep. at 47.)

Moreover, Werner testified that Menards expects every carryout to take reasonable precautions "[t]o avoid hitting a guest with carts." (Werner Dep. at 95–97.) These precautions include ensuring the carryout watches where he is pushing carts, and confirms that there are no guests in his "direct controllable path." (*Id.* at 100–103; West Dep. at 47.)

Plaintiffs also cite to Werner's testimony as to Menards' expectations as to how a reasonable carryout should approach the cart corral. He testified that Menards anticipates that guests might have their backs to the cart corral after they have grabbed their cart, and also acknowledges that a guest may take some time to place a purse in a cart, or help a small child into the cart with their back to the cart corral. (Werner Dep. at 122–24;175–76.) He also acknowledged that a "reasonable and safe" carryout should wait to push a train

of carts into the cart corral if there is a guest in the path of his carts. (Werner Dep. at 127–129.) Werner further testified that a reasonable and safe carryout should make sure to push the train of carts slower than usual when returning carts to the cart corral, both to avoid the carts moving more than expected on the slick floors, and to ensure an appropriate distance from the guest-end of the corral. (*Id.*) In fact, A.D. testified that he was trained to move slowly when he pushed carts into the cart corral for that exact reason. (A.D. Dep. at 57–58.)

### 2.    Breach of the Duty of Reasonable Care

Plaintiffs have identified sufficient evidence in the record to create a triable issue as to whether Menards breached its duty of care. For example, a reasonable juror could find that A.D. actually hit Ms. Gfroerer with the train of carts that he was pushing and caused her injuries. Defendant's video footage further provides a basis for a reasonable juror to infer that A.D. was not acting as a reasonably prudent carryout when he pushed his train of carts into the cart corral.

Menards has produced security-camera footage of the entry area at the time of the impact. (Zeletes Decl., Ex. 7, Surveillance Footage.) That footage shows Plaintiffs entering the area and passing through the turnstile. (*Id.*, Entrance 1 at 0:52–1:05.) A few seconds later, A.D. walks through the doors with a train of carts and pushes the carts into the cart corral. (*Id.* at 1:14–1:18.) This evidence aligns with Plaintiffs' testimony regarding the incident. (Mr. Gfroerer Dep. at 17-20; Ms. Gfroerer Dep. at 28–33.) Additionally, Plaintiffs filed an incident report before leaving the store and testified that other Menards employees, including A.D. and West, witnessed the incident. (Rochlin Decl., Ex. 5, Incident Report;

Mr. Gfroerer Dep. at 32; *Id.* at 51.) A reasonable juror could infer that A.D. pushed a row of carts in such a way that they hit Ms. Gfroerer. (*See* Rochlin Decl., Ex. 9, Summary of Medical Records.) Further, a juror could find that if Ms. Gfroerer was hit with the row of carts, A.D. must have been moving too quickly, or was not sufficiently in control of his carts.

Although Menards argues that the security-camera footage shows A.D. acting as a reasonably prudent carryout, (Def.'s Mem. at 5), the footage is not sufficiently clear to establish the absence of any negligence on his part. The footage does not definitively establish that A.D. was walking slowly and maintaining control of his cart. Moreover, the footage fails to establish whether A.D. checked to make sure no customers were standing near the guest end of the cart corral.

In sum, genuine issues of material fact preclude summary judgment. *Celotex Corp.*, 477 U.S. at 327.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 26] is **DENIED**.

Dated: October 20, 2021                                  s/Susan Richard Nelson
                                                         SUSAN RICHARD NELSON
                                                         United States District Judge